UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANA PASQUALE,<br><br>    Plaintiff,<br><br>    v.<br><br>LAW OFFICES OF NELSON & KENNARD,<br><br>    Defendant. | Case No. 11-cv-05265-JCS<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 56 |

## I.    INTRODUCTION

Plaintiff Dana Pasquale brings this action under the Fair Debt Collection Practices Act ("FDCPA), 15 U.S.C. §§ 1692 *et seq*. and the Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act"), Cal. Civ. Code §§ 1788 *et seq*., alleging that telephone messages left on her home answering machine by Defendant Law Offices of Nelson & Kennard ("Nelson & Kennard") did not comply with § 1692(e)(11) because they failed to disclose that Nelson & Kennard was a debt collector.[1] Nelson & Kennard brings a Motion for Summary Judgment seeking dismissal of Plaintiff's claims on the grounds that it complied with the FDCPA, as a matter of law, or in the alternative, that the undisputed facts establish that its failure to comply was a bona fide mistake. Nelson & Kennard asserts that Plaintiff's claim under the Rosenthal Act fails for the additional reason that it is not a "debt collector" under that Act. The Court finds that the Motion is suitable for determination without oral argument, and therefore **vacates the hearing set for April 19, 2013** pursuant to Civ.L.R. 7-1(b); the Case Management Conference set for the same date and

---

[1] In her amended complaint Plaintiff also asserted claims under Sections 1692e(2), 1692e(4), and 1692e(5) of the FDCPA. Plaintiff subsequently withdrew those claims. *See* Docket No. 41.

time is also vacated. For the reasons stated below, the Motion is GRANTED.[2]

## II.     BACKGROUND

### A.     Factual Background[3]

#### 1.     Communications between Pasquale and Nelson & Kennard

Nelson & Kennard was retained by Riverwalk Holdings, Ltd. ("Riverwalk"), on May 18, 2010 to file suit against Plaintiff to collect the balance due and owing on a credit card account issued by Washington Mutual Bank and assigned to Riverwalk. Declaration of Robert Scott Kennard in Support of Defendant's Motion for Summary Judgment ("Kennard Decl."), ¶ 4. On May 21, 2010, Nelson & Kennard mailed a letter to Pasquale informing her that Nelson & Kennard represented Riverwalk and had been instructed to "take appropriate action to effect collection" of the amount due on the account. Kennard Decl., Ex. 1 (May 21, 2010 Collection Letter). According to Nelson & Kennard, the May 21, 2010 Collection Letter contained "all the admonitions required under 15 USC §1692g, 15 USC §1692e(11) and the Rosenthal Act." Kennard Decl., ¶ 6.

Pasquale replied to Nelson & Kennard's May 21, 2010 letter in an undated letter received by Nelson & Kennard on June 4, 2010. Pasquale acknowledged receipt of Defendant's May 21, 2010 Letter and requested that Nelson & Kennard "validate this alleged debt explaining why you are demanding the sum of $19,236.06." Kennard Decl., Ex. 2 (June 4, 2010 Letter).

On June 17, 2010, Nelson & Kennard sent Plaintiff a letter setting forth its verification obligations under the FDCPA and providing the name and address of the original creditor, the current owner of the debt, the amount due and a copy of the terms and conditions of the bill of sale. It also states that Nelson & Kennard is a "debt collector attempting to collect a debt." Kennard Decl., Ex. 3.

---

[2] The parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).
[3] Defendant did not comply with the Standing Order of the undersigned magistrate judge requiring that summary judgment motions must be supported by a joint statement of undisputed facts. Therefore, unless otherwise noted, the facts in this section are those that the Court finds to be undisputed. The Court notes that Plaintiff does not challenge any of Defendants' evidence documenting the communications between Nelson & Kennard. Nor does she Plaintiff dispute Defendant's evidence describing the procedures it follows to ensure FDCPA compliance.

On July 6, 2010, Nelson & Kennard received another letter from Pasquale, carrying the heading "Notice of Dispute of Alleged Debt." Kennard Decl., Ex. 4 (Notice of Dispute). The Notice of Dispute references the file number that was indicated on the two previous letters from Nelson & Kennard to Pasquale, as well as the June 17, 2010 Letter. *Id*. at 1. Pasquale states that she has "received and read the debt collection letter referenced above, identifying yourself as debt collectors . . .wherein you allege that I have a debt obligation to the alleged creditor referenced above . . .[and that] the purpose of this Notice of Dispute is to assert my rights in debt collection under FDCPA § 1692(g) (b) without delay and within thirty (30) days of my receipt of your aforesaid debt collection letter." She goes on to request extensive documentation to substantiate the debt and Nelson & Kennard's authority to collect on the account, referencing, *inter alia*, specific provisions of the U.S. Code, the Federal Rules of Evidence and forms issued by the United States Department of the Treasury. *Id*. Copies of Nelson & Kennard's May 21, 2010 and June 17, 2010 Letters were attached to the July 6, 2010 Notice of Dispute. *Id*.

Nelson and Kennard responded to Pasquale's Notice of Dispute in a letter dated July 8, 2010, attaching a copy of the June 17, 2010 Letter and stating that Nelson & Kennard is a "debt collector attempting to collect a debt." *Id*., Ex. 5 (July 8, 2010 Letter).

On July 29, 2010, Defendant received a "Second Notice of Dispute of Alleged Debt" from Pasquale. *Id*., Ex. 6 ("Second Notice of Dispute"). The Second Notice of Dispute referenced Nelson & Kennard's July 8, 2010 Letter and again requested detailed documentation related to the debt. *Id*. Pasquale attached copies of all of the previous communications that had been exchanged between Nelson & Kennard and Pasquale.

On July 30, 2010, Nelson & Kennard sent a letter that was essentially the same as the June 17, 2010 Letter, again listing the name and address of the original creditor, the current owner of the debt, the amount due and providing a copy of the terms and conditions of the bill of sale. *Id*., Ex. 7 (July 30, 2010 Letter). Like the June 17, 2010 Letter, the July 30, 2010 Letter also stated that Nelson & Kennard is a "debt collector attempting to collect a debt." *Id*.

1       On August 19, 2010, Pasquale sent a Third Notice of Dispute. *Id*., Ex. 8 (Third Notice of

2 Dispute). This letter acknowledged receipt of the July 30, 2010 Letter. *Id*. Otherwise, it was

3 virtually identical to the previous notices of dispute. *Id*. Nelson & Kennard did not reply to the

4 Third Notice of Dispute, believing that it had already met its obligation to verify the debt. *Id*. ¶

5 13.

6       On September 18, 2010, Nelson & Kennard attempted, for the first time, to reach Plaintiff

7 by telephone. *Id*. ¶ 14. An answering machine picked up, and the transcript of the call is as

8 follows:

> Answering Machine: No one is available to take your call. Please leave a message. (Beep)
>
> Nelson &Kennard Employee: This message is for Dana Pasquale. This is Jose Loya. I am calling from the law offices of Nelson & Kennard. May I remind you that we are working with a time sensitive matter here so it would be in your best interest to return this call. Toll free number will be 866 920 2296. This firm is a debt collector.

*Id*.

15       On September 23, 2010, a Nelson & Kennard account representative spoke with Pasquale

16 by telephone. *Id*. ¶ 15. According to the Kennard Declaration, contemporaneous notes of the

17 conversation indicate that the "mini Miranda" (indicating that Nelson & Kennard was a debt

18 collector attempting to collect a debt) was provided by its account representative and Pasquale said

19 she "needed time to review her finances" and would return the call later. *Id*.

20       As of September 27, 2010, Defendant had not received a return call from Pasquale. *Id*. ¶

21 16. On that date, a Nelson & Kennard account representative placed another telephone call to

22 Plaintiff. *Id*. Again, the answering machine picked up. *Id*. The transcript of the call is as

23 follows:

> Answering Machine: No one is available to take your call. Please leave a message. (Beep).
>
> Nelson & Kennard Employee: This message is for Dana Pasquale. This is Mike Lopez calling from the law firm of Nelson & Kennard. Please call me back at your earliest convenience. 866 920 2296. We do have important information for to discuss with you and it is in your best interest to return the call. 866 920 2296, extension 198.

4

*Id*.

On September 30, 2010, a Nelson & Kennard account representative spoke with Pasquale by telephone. *Id*. ¶ 17.  Pasquale requested that Nelson & Kennard call at a specified time to discuss a repayment arrangement. *Id*. However, when a Nelson & Kennard account representative called Pasquale back at the arranged time, Pasquale could not be reached. *Id.*

On October 6, 2010, a Nelson &Kennard account representative again placed a telephone call to Pasquale and reached her answering machine. *Id*. ¶ 18. The transcript of that call is as follows:

> Answering Machine: Hello, you have reached the Pasquales. Please leave a message. (Beep)
>
> Nelson &Kennard Employee: This message is for Dana Pasquale. I am calling from the law firm of Nelson & Kennard. It is important that you return this call. Toll free number is 866 920 2296, extension 170. My name is Marco Cota calling from the law office of Nelson & Kennard once again. I have time sensitive information to disclose to you. It is important you return the call. Thank you. Bye bye.

*Id*.

On December 15, 2010, Michelle Moralez, a Nelson & Kennard account representative, spoke with Pasquale by telephone. *Id*. ¶ 19.  Pasquale again requested a call back at a later time. *Id*. Ms. Morales called back and left a message but did not receive a return call. *Id*.  She then tried to reach Pasquale on two subsequent occasions, unsuccessfully. *Id*. In particular, Ms. Moralez left messages on Pasquale's answering machine on February 28, 2011 and March 11, 2011. *Id*. ¶¶ 19-21.  The transcript of the February 28, 2011 call is as follows:

> Answering Machine:  Hello, you have reached the Pasquales please leave a message.  (Beep).
>
> Nelson & Kennard Employee: This message is for Dana Pasquale. This is Michelle Moralez calling from the law office of Nelson & Kennard.  Please return this phone call to 866 920 2295, extension 137. Thank you.

*Id*. The transcript of the March 11, 2011 call is as follows:

> Answering Machine: Hello, you have reached the Pasquales  please leave a message. (Beep) .
>
> Nelson & Kennard Employee: This message is for Dana Pasquale. This is Michelle Moralez calling from the law office of Nelson &

>Kennard. Please return this call to 866 920 2295, extension 137. Thank you.

*Id.*

On March 21, 2011, Nelson & Kennard received a letter form Pasquale indicating she wished to arbitrate Riverwalk's claim against her. *Id*., ¶ 22 & Ex. 10. Pasquale sent another letter directly to Riverwalk requesting arbitration. *Id*., Ex. 11. Nelson & Kennard sent Pasquale a letter dated May 23, 2011 informing her that Riverwalk had agreed to the request. *Id*., Ex. 12. On July 7, 2011 Nelson & Kennard submitted a claim on Riverwalk's behalf with the American Arbitration Association. *Id*. ¶ 24 & Ex. 13.

### 2. Nelson & Kennard Training and Protocols

Mr. Kennard, one of the two partners of the Nelson & Kennard firm, describes the following training used by Nelson & Kennard to ensure compliance with the FDCPA and the Rosenthal Act:

>Each account representative employed on behalf of Nelson & Kennard undergoes significant training, testing and are provided scripts with respect to the content of voicemail messages left for consumers. The initial training provided to the account representatives consists of approximately two weeks in a classroom environment where attorneys and supervisory personnel instruct the account representatives on such matters as the proper documentation of communications with consumers, the content of the FDCPA and California's Rosenthal Act, the litigation process as it relates to consumer accounts and other matters. Training includes interactive role playing, mentoring and frequent testing on training materials.

*Id.* ¶ 25. The day-by-day agenda of the training given to account representatives is provided as an attachment to the Kennard Declaration, *id.*, Ex. 14, and Mr. Kennard states that "the account representatives whose calls are at issue in this litigation received training substantially consistent with the attached agenda." *Id.* ¶ 25.

Mr. Kennard further states in his declaration that Nelson & Kennard conducts "periodic retesting" of its account representatives and that the account representatives involved in the communications at issue in this case were tested on their knowledge of the FDCPA in February 2010. *Id.* ¶ 15 & Ex. 15. Attached to the declaration are relevant portions of Defendant's training materials, as well as the responses of two account representatives, Cota and Lopez. *Id.*, Ex. 15. Mr. Kennard notes that the test results for account representative Moralez could not be located and

6

appear to have been misplaced. *Id*. at 10 n. 1. The training materials state that the "mini-Miranda" is "a warning required under the FDCPA to be given by debt collectors in certain written and oral communications" which reads: "This communication is an attempt to collect a debt and all information obtained will be used for that purpose." *Id*. The training materials go on to explain that "[t]he original version of the FDCPA required that the 'mini-Miranda' be used in all communications, both written and oral" but that "[t]he current version of the FDCPA requires that the 'mini-Miranda' be used only in the **first** communication." *Id*. It continues, "[a]fter the first communication, the FDCPA requires only that you identify yourself as a debt collector." *Id*. The test responses of Cota and Lopez indicate that both understood that on outgoing calls, they should be saying at the beginning of every call at least that Nelson & Kennard is a debt collector. *Id*.

According to Mr. Kennard, Nelson & Kennard also provides its account representatives with "scripts and sample voicemail messages which are posted and available" at each individual account representative's desk. *Id*. ¶ 27. A copy of the script for making outgoing calls is attached to the declaration. *Id*., Ex. 16. It states that for all outgoing calls, the account representative must start the call by stating that "[t]his firm is a debt collector and this call is being recorded." *Id*.

Finally, Mr. Kennard states that in June 2010, Nelson & Kennard began using a digital call recording system which records "a significant number" of incoming and outgoing calls from Nelson & Kennard. *Id*. ¶ 28. Mr. Kennard states that the recording system "was and is used as a training tool" and that "Nelson & Kennard personnel, including the undersigned, consistently review random calls and use the information gleaned for review and training purposes with account representatives." *Id*. [4]

### B. The Motion

Nelson & Kennard seeks summary judgment on Pasquale's FDCPA claim and her Rosenthal Act claim (which depends on the FDCPA claim) on the ground that it was not required under § 1692e(11) to state in its messages that it was a debt collector because the messages were

---

[4] The digital recording system recorded all of the calls that are at issue in this case. *Id*. They were reviewed and transcribed by Mr. Kennard. *Id*.

"follow-up" messages and therefore do not constitute "communications" under the FDCPA. Motion at 9-14. According to Defendant, whether a violation occurs is based on an objective inquiry as to whether the 'least sophisticated debtor would likely be misled by a communication.'" *Id*. at 9-10 (citing *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1030 (9th Cir. 2010)). That standard is not met, Defendant contends, under the circumstances of this case, where Pasquale had actual knowledge of the identity of the caller and the purpose of the calls. *Id*. at 11 (citing *Reed v. Global Acceptance Credit Co.*, 2008 WL 3330165 (N.D. Cal. Aug. 12, 2008)). Defendant points out that some courts have held that a telephone message is not a "communication" under the FDCPA where it contains no information about the debt. *Id*. (citing *Biggs v. Credit Collections, Inc.*, 2007 WL 4034997 (W.D. Ok. Nov. 15, 2007)). Defendant also notes that in *Reed*, the court cited the Ninth Circuit's holding in *Pressley v. Capital Credit and Collections Service* that a follow-up call is not a "communication" under the FDCPA. *Id*. (citing 760 F.2d 922, 925 (9th Cir. 1985)). According to Defendant, these cases support the conclusion that it would serve no useful purpose to require further disclosures in Defendant's telephone messages because Pasquale was already aware that Nelson & Kennard was a debt collector attempting to collect a debt. *Id*. at 14.

Nelson & Kennard further contends that even if the telephone messages violated the FDCPA, it is entitled to summary judgment in its favor because the undisputed evidence establishes that the violations were "not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." *Id*. at 14 (citing 15 U.S.C. § 1692k(c); *Clark v. Capital Credit & Collection Services, Inc.*, 460 F.3d 1162, 1176-77 (9th Cir. 2006)). Defendant points to the training procedures and protocols described in the Kennard Declaration, discussed above. *Id*.

Finally, Defendant seeks summary judgment on the Rosenthal Act claim not only because liability on that claim is derivative of liability under the FDCPA, but also on the basis that Nelson & Kennard is not a "debt collector" under the Rosenthal Act, which excludes "an attorney or counselor at law." *Id*. at 16 (citing Cal. Civ. Code Section 1788.2(c); *Owings v. Hunt & Henriques*, 2010 WL 3489342 (S.D. Cal. Sept. 3, 2010)).

In her Opposition brief, Plaintiff challenges all three of Defendant's arguments. First, she

rejects Nelson & Kennard's reliance on *Reed* and *Pressley* for the proposition that Nelson & Kennard was not required to disclose that it was a debt collector in follow-up messages because she knew it was a debt collector collecting a debt. Opposition at 5-10. Pasquale argues that after *Pressley* was decided, § 1692e(11) was amended to make clear that in *any* subsequent communication after the initial communication from a debt collector, it must be disclosed that the communication is from a debt collector. *Id*. at 6. Because this requirement is so clear, Pasquale asserts, the Court should grant summary judgment in favor of *Plaintiff* that the FDCPA and the Rosenthal Act have been violated, and not in favor of Nelson & Kennard. *Id*. at 2.

Second, Pasquale argues that Nelson & Kennard is not entitled to summary judgment in its favor based on the bona fide error defense of the FDCPA because this is generally a fact question and to prevail on this defense a debt collector must provide an "elaborate" description of the procedures in place. *Id*. at 11 (citing *Wilhelm v. Credico, Inc.*, 519 F.3d 416, 421 (8th Cir. 2008)). Further, Pasquale asserts, this defense should be interpreted narrowly should not be applied here because Defendant has not presented any evidence as to why Nelson & Kennard's training procedures failed in this case. *Id*. at 12.

Third, Pasquale argues that the exception for attorneys under the Rosenthal Act does not apply to law firms and therefore, that Nelson & Kennard is a debt collector under that act. *Id*. at 13-17.

In its Reply brief, Nelson & Kennard argue that all the evidence shows that Plaintiff was not misled by the messages on her answering machine because she knew Nelson & Kennard was a debt collector. Reply at 4. Further, Defendant argues that *Reed* and *Pressley* remain good law even though § 1692e(11) was subsequently amended because the amendment lessened the disclosure requirements under the FDCPA rather than increasing them. *Id*. at 7. Nelson & Kennard also asserts that it is entitled to summary judgment because it has offered extensive evidence that it followed reasonable procedures to ensure compliance with the FDCPA and the Rosenthal Act and that Pasquale has offered no evidence in response showing that its procedures were insufficient. *Id*. at 9-13. Finally, Nelson & Kennard argues that the exception under the Rosenthal Act for attorneys also applies to law partnerships like Nelson & Kennard. *Id*. at 13-14.

9

## III. ANALYSIS

### A. Legal Standard under Rule 56

Summary judgment on a claim or defense is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In order to prevail, a party moving for summary judgment must show the absence of a genuine issue of material fact with respect to an essential element of the non-moving party's claim, or to a defense on which the non-moving party will bear the burden of persuasion at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this showing, the burden then shifts to the party opposing summary judgment to designate "specific facts showing there is a genuine issue for trial." *Id*. On summary judgment, the court draws all reasonable factual inferences in favor of the non-movant. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

### B. Whether Nelson & Kennard Was Required to Disclose that it is a Debt Collector in Follow-up Voicemail Messages

Defendant contends the voicemail messages at issue in this case do not violate the FDCPA, even though they did not include a statement indicating that Nelson & Kennard is a debt collector, because they were not false and misleading. Because the plain language of § 1692e(11) specifically requires that *all* subsequent communications disclose that the communication is from a debt collector, the Court rejects Nelson & Kennard's position.

The first sentence of § 1692e prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. In order to determine whether conduct is "false, deceptive or misleading," courts must undergo "an objective analysis that takes into account whether 'the least sophisticated debtor would likely be misled by a communication.'" *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1030 (9th Cir. 2010) (citing *Guerrero v. RJM Acquisitions LLC,* 499 F.3d 926, 934 (9th Cir. 2007)). Section 1692e also enumerates specific conduct that constitutes a violation. In particular, the second sentence states, "[w]ithout limiting the general application of the foregoing, the following conduct is a violation of this section," and in subsection (11) makes actionable the

10

following specific conduct:

> (11) The failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, *and the failure to disclose in subsequent communications that the communication is from a debt collector*, except that this paragraph shall not apply to a formal pleading made in connection with a legal action.

15 U.S.C. § 1692e(11) (emphasis added). The plain language of this provision requires a debt collector to identify himself as such in *all* subsequent communication. *See Savage v. NIC, Inc.*, 2009 WL 2259726, at *5-6 (D. Ariz. July 28, 2009) (holding that telephone message in which caller did not identify himself as a debt collection violated § 1692e(11) and that this disclosure must be included in *all* subsequent communications) (citing *Schwarm v. Craighead*, 552 F.Supp.2d 1056, 1081-1082 (E.D. Cal., 2008)). The court in *Savage* noted that "presuming that Plaintiffs were aware that Defendant was a debt collector would be contrary to the objectives of the statute to protect debtors, even the most unsophisticated, from abusive or deceptive collection practices." *Id*. at *6.

In *Reed v. Global Acceptance Credit Company*, another judge in this district reached a different conclusion in a case that is factually similar to this one, involving follow-up voicemail messages. 2008 WL 3330165 (N.D. Cal. Aug. 12, 2008). Citing the Ninth Circuit's decision in *Pressley v. Capital Credit & Collection Serv.,* 760 F. 2d 922, 925 (9th Cir. 1985) (*per curiam*), the court in *Reed* found that where the debtor already knows the identity of the debt collector, follow-up notices from the debt collector are not "communications" and the FDCPA and need not comply with § 1692e(11) so long as they are not false and misleading. *Id*. at * 3. The Court went on to find that there was a fact question that precluded summary judgment because there was evidence from which a jury, applying the least sophisticated consumer standard, could reasonably have concluded that the communications at issue were not misleading. *Id*. at * 4. The Court relied, in part, on prior communications between the defendant and the debtor indicating that the debtor might have been aware of the identity of the caller and the nature of the call. *Id.* The court also cited the name of the debt collector -- Global Acceptance Credit Company -- which it found

11

1  might also have alerted the debtor that the caller was a debt collector. *Id*.

2        This Court respectfully declines to follow the reasoning in *Reed* because it finds that

3  *Pressley* is no longer good law. *See Schwarm v. Craighead*, 552 F.Supp.2d 1056, 1081-1082

4  (E.D. Cal., 2008). In *Schwarm*, the court found that the holding in *Pressley* was superseded by a

5  change in § 1692e(11) distinguishing between initial and subsequent communications:

> In *Pressley v. Capital Credit & Collection Serv., Inc*., 760 F.2d 922 (9th Cir.1985), the Ninth Circuit held that § 1692e(11)'s requirements do not apply to a "follow up notice which only demands a payment as earlier requested" so long as there is no evidence that the debt collector's communications were abusive, false, deceptive, or misleading. *Id*. at 925. The court reasoned that a follow up notice did not constitute a "communication" as used in § 1692e(11). *Id*. The court's decision, however, was based on a prior version of § 1692e(11). *Id*. Unlike the prior version, which applied to "all communications," Congress amended subsection (11) in 1996 to differentiate between "initial" communications and "subsequent" communications. 15 U.S.C. § 1692e(11). The 1996 amendment also limited the requisite disclosure for subsequent communications to include only that the communication is from a debt collector. This limitation is consistent with the Ninth Circuit's reasoning that Congress did not intend for the full disclosure the pre-1996 version of subsection (11) required to be in every subsequent communication. *Id*. Therefore, in light of the 1996 amendments to § 1692e(11), the Ninth Circuit's holding that § 1692e(11) does not apply to follow up notices is no longer good law.

17  552 F.2d at 1081 n. 18. This Court agrees with the reasoning of *Schwarm* and reaches the same

18  conclusion.

19        The Court also rejects Nelson & Kennard's reliance on *Biggs v. Credit Collections, Inc*.,

20  2007 WL 4034997 (W.D. Okla. Nov. 15, 2007). In that case, the court held that a voicemail

21  message from a debt collector that contained no information about the debt was not a

22  "communication" under the FDCPA's definition of that term and therefore was not required to

23  comply with § 1692(11). The holding in *Biggs* is a minority position that has not been followed

24  by any court in the Ninth Circuit; indeed, courts in the Ninth Circuit (and elsewhere) have rejected

25  the reasoning of *Biggs*. *See Lensch v. Armada Corp*., 795 F.Supp.2d 1180, 1188 (W.D. Wash.,

26  2011) (citing *Costa v. Nat'l Action Fin. Servs*., 634 F.Supp.2d 1069, 1076 (E.D. Cal. 2007);

27  *Hosseinzadeh v. M.R.S. Associates., Inc*., 387 F.Supp.2d 1104, 1116 (C.D. Cal. 2005)). These

28  courts have pointed to the fact that the definition of "communication" under the FDCPA is broad,

1 covering "the conveying of information regarding a *debt directly or indirectly* to any person
2 through any medium." 15 U.S.C. § 1692a(2) (emphasis added). As the court in *Lensch* noted,
3 "[t]he weight of authority falls in favor of a broad interpretation, and most courts to decide this
4 issue have held that voicemails are communications that must conform to the disclosure
5 requirements of section 1692e(11)." This Court agrees.

Because the Court finds that the voicemail messages at issue in this case are subsequent communications that must meet the requirements of § 1692e(11), Nelson & Kennard is not entitled to summary judgment on this question.

### C. Whether Nelson & Kennard is Entitled to Summary Judgment on Bona Fide Error Defense

Nelson & Kennard seeks summary judgment on the alternative ground that based on the undisputed facts, the bona fide error defense applies. The Court agrees.

The Ninth Circuit has held that the FDCPA is "a strict liability statute." *Clark v. Capital Credit & Collection Services, Inc.*, 460 F.3d 1162, 1175 (9th Cir. 2006). Thus, it is not necessary to prove that a debt collector acted intentionally to establish a violation of § 1692e. *Id*. However, the FDCPA provides the following defense to liability for debt collectors where a violation results from a bona fide error:

> A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

15 U.S.C. § 1692k(c).

Here, Nelson & Kennard has offered evidence showing that: 1) it trains its account representatives to start all subsequent telephone calls with debtors with disclosure that the call is from a debt collector; 2) it gives its account representatives scripts with specific language to be used in telephone communications, including the disclosure that the call is from a debt collector; 3) it reviews recorded telephone calls on a regular basis to ensure compliance ; and 4) the account representatives who left the telephone messages had been tested recently as to the disclosures required for telephone calls placed to debtors. This evidence is sufficient to make a prima facie

case, based on a preponderance of the evidence, that the failure to indicate that the voice mail messages were coming from a debt collector was unintentional and occurred despite Nelson & Kennard's maintenance of procedures reasonably adapted to avoid such error. Pasquale did not rebut that showing with any evidence of her own. The Court finds that there is no evidence in the record from which a jury could reasonably conclude that the omission was anything but a bona fide error. *See Wilhelm v. Credico, Inc.*, 519 F.3d 416, 421 (8th Cir. 2008) (affirming summary judgment in favor of debt collector on bona fide error defense, even though defense involves a fact-intensive inquiry, where the defendant had provided an affidavit from its president explaining the procedures it follows to ensure compliance, as well as a copy of the company's written policy, and where the plaintiff "did not depose [the defendant's] president or any other employee, did not seek to discover the identity of the former clerical employee [who committed the error], and offered no affidavits, depositions, or other evidence disputing [the defendant's] affidavits).[5]

### D. Whether Nelson & Kennard is Entitled to Summary Judgment on the Rosenthal Act Claim on the Ground that it is Not a Debt Collector

Nelson & Kennard seeks summary judgment on the Rosenthal Act claim on the additional basis that it is not a "debt collector" under the Rosenthal Act, citing Cal. Civ. Code Section 1788.2(c). That subsection provides as follows:

> c) The term "debt collector" means any person who, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection. The term includes any person who composes and sells, or offers to compose and sell, forms, letters, and other collection media used or intended to be used for

---

[5] The Court notes that any inference that Nelson & Kennard was attempting to mislead Pasquale by failing to disclose in the follow-up voice mail messages that the calls were from a debt collector is significantly undermined by the extensive evidence in the record that Pasquale knew that the messages were from a debt collector *and* that Nelson & Kennard knew that Pasquale understood that it was a debt collector based on the multiple communications it had already received from her acknowledging that she had not only received the prior communications from Nelson & Kennard but also had some familiarity with the laws governing the debt collection process. Regardless of what Pasquale did or did not know, however, the evidence offered by Nelson & Kennard establishing both its general training policies and the training actually received by the account representatives involved in the specific communications at issue in this case is a sufficient basis for granting summary judgment in Defendant's favor where Plaintiff has come forward with no evidence of her own from which a jury could reasonably conclude Nelson & Kennard either acted intentionally or maintained inadequate training and procedures to ensure compliance.

debt collection, but does not include an attorney or counselor at law.

Cal. Civ. Code Section 1788.2(c). A number of federal district courts have held that this provision creates an exclusion for attorneys but not for law firms. *See*, *e.g., Abels. v. JBC Legal Group, P.C.*, 227 F.R.D 541, 548 (N.D. Cal. 2005); *Moriarty v. Henriques*, 2011 WL 4769270, * 6 (E.D. Cal. Oct. 7, 2011); *Miranda v. Law Office of D. Scott Carruthers*, 2011 WL 2037556 (E.D.Cal., May 23, 2011). These decisions rely on the plain language of the provision and the intent of the California legislature but do not cite any cases decided by California courts. On the other hand, the court in *Owings v. Hunt & Henriques*, 2010 WL 3489342 (S.D. Cal. Sept. 3, 2010) held that law firms *are* exempt from liability under the Rosenthal Act based on the decision of a California appellate court in *Carney v. Rotkin, Schmerin & McIntyre*, 206 Cal. App. 3d 1513, 1518 (1988). The *Carney* court, however, did not explain its holding or address the distinction between law firms and attorneys; nor did it address legislative intent.

Given the split authority on this question and the limited guidance to be found in the case law of the California courts -- and because the Court has already found that the Rosenthal Act claim fails on the ground that there is no liability under the FDCPA -- the Court declines to rule on this issue.

## IV. CONCLUSION

For the reasons stated above, the Motion is GRANTED. This action is dismissed, in its entirety, with prejudice. The Clerk is instructed to enter judgment in favor of Defendant and close the file in this case.

IT IS SO ORDERED.

Dated: April 15, 2013

_____
Joseph C. Spero
United States Magistrate Judge

15